# Wytheville

CECELIA MCKENNA LINDSEY KERN v. HENRY DORSEY LINDSEY.

June 22, 1944.

Record No. 2798.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Cutler May*, for the appellant.

*Florance & Florance*, for the appellee.

EGGLESTON, J., delivered the opinion of the court.

This is a controversy between a divorced couple over the custody and control of their thirteen-year-old son, Carroll Scott Lindsey.

Henry Dorsey Lindsey of Richmond, Virginia, and Cecelia McKenna Utsey of Columbia, South Carolina, were married in May, 1928. Their life together was begun under inauspicious circumstances. She was young, only nineteen, and had recently recovered from a nervous disorder. The husband was about thirty-three years old and had not had a successful business career. The home in Richmond to which he took his bride and the manner in which it was furnished seems to have been a shock both to her and to the members of her family. The couple frequently quarreled. The wife claimed that he neglected her, treated her cruelly, and at times struck her, while he in turn claimed that she showed no affection for him.

On September 1, 1930, their only child was born. A month later, as soon as the mother was able to travel, she left her husband and returned to her people, at Columbia, claiming that the conditions under which she had been living were no longer bearable. In November, 1930, she filed a suit for divorce against her husband on the ground of cruelty and constructive desertion, and prayed for the custody of her infant son. The husband filed an answer and cross-bill alleging desertion. The court granted the wife a decree *a mensa* on the ground of constructive desertion and awarded to her the custody of the child. On January 8, 1935, the decree was enlarged into a divorce *a vinculo* and the mother was given exclusive custody of the child.

On June 12, 1940, the father filed a petition in the cause alleging that Mrs. Lindsey had remarried and was living in Florida with her then husband, Frank Kern; that the child was in the care and custody of his maternal grandmother, Mrs. Mary Utsey of Columbia, who was not a fit person for the purpose; and that he (the petitioner) was now in a position to support and maintain his son in a fit and proper manner. He prayed that he be awarded the custody of the child.

Mrs. Kern made a special appearance and contested the jurisdiction of the court on the ground that both she and the child had not lived in Virginia since the institution of the original divorce proceeding, in November, 1930; that they had changed their residence and domicile first to South Carolina, and later to Florida, where they now resided and were domiciled; and that, therefore, the Virginia court had no jurisdiction either of her or of the child, and no power or authority to enter a decree awarding the child's custody to the father. The lower court overruled this contention and its action in so doing is made a major assignment of error.

Mrs. Kern then moved to abate the proceeding because of the failure of her former husband to pay the alimony decreed against him in the divorce suit. This motion was likewise overruled, and the action of the court thereon is likewise assigned as error.

When these preliminary matters had been disposed of, Mrs. Kern filed an answer to the petition contesting any modification in the terms of the decree which had given her exclusive custody of the child. To protect the interests of the child the court appointed a guardian *ad litem* who filed an answer and attended the subsequent proceedings.

After several hearings, extending over a period of two and one-half years, during which considerable testimony was taken, mainly *ore tenus*, the court entered the decree here complained of. It decreed that the appellee father pay into court to the credit of the cause, for the benefit, maintenance, education and support of the child, the sum of $2,520, with interest, representing the total of the accumulated and unpaid alimony which the appellee had been directed to pay under the former decrees. It found and further decreed that the best interests of the child would be served by allowing him to remain in the custody of the mother, but that he should be given the opportunity of knowing and establishing the proper relationship with his father; that since she had refused to allow the father to visit, see, or correspond with, the child, the latter should be allowed to visit his father from July 15 to August 25, in each year, and for a period

of ten days during the Christmas holidays; that the father and son should be allowed to correspond with each other; and that the father should be allowed to pay him monthly visits "at reasonable times, from time to time." The decree also required the husband appellee to pay the cost of the proceeding in the lower court, including a fee of $245 to the guardian *ad litem,* and a fee of $400 to counsel for his former wife.

From this decree Mrs. Kern has appealed, and the appellee has assigned cross-error.

The first assignment of error is to the action of the lower court in overruling the appellant's contention that both she and the child are residents and citizens of, and domiciled in, the State of Florida, and that, therefore, the Virginia court had no jurisdiction of them and no power or authority to enter a decree affecting her custody of the child.

Code, section 5111 (as amended by Acts 1926, ch. 107, p. 105, Acts 1927, Ex. Sess., ch. 85, p. 184, Acts 1934, ch. 329, p. 515, Acts 1938, ch. 418, p. 784), provides: "Upon decreeing the dissolution of a marriage, and also upon decreeing a divorce, whether from the bond of matrimony or from bed and board, * * * the court may make such further decree as it shall deem expedient concerning the estate and the maintenance of the parties, or either of them, and the care, custody and maintenance of their minor children, and may determine with which of the parents the children or any of them, shall remain; and the court may, from time to time afterwards, on petition of either of the parents, revise and alter such decree concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require; * * * ."

Statutes of this character are found in many of the States, and under the great weight of authority the power of the court to modify the decree is not affected by a removal of the child from the jurisdiction by the parent to whom its custody was awarded, or by the fact that such parent and the child have changed their domicile to another

State. See 17 Am. Jur., Divorce and Separation, section 686, p. 520; 27 C. J. S., Divorce, section 317, p. 1187; Annotation: 70 A. L. R. 526, collecting a number of cases. Among the leading cases on the subject are *Hersey* v. *Hersey*, 271 Mass. 545, 171 N. E. 815, 70 A. L. R. 518; *Tinker* v. *Tinker*, 144 Okl. 97, 290 P. 185; *Morrill* v. *Morrill*, 83 Conn. 479, 77 A. 1; *Stetson* v. *Stetson*, 80 Me. 483, 15 A. 60. More recent cases are *Hatch* v. *Hatch*, 15 N. J. Misc. 461, 192 A. 241; *White* v. *Shalit*, 136 Me. 65, 1 A. (2d) 765; *Reynolds* v. *Reynolds*, 21 Cal. (2d) 580, 134 P. (2d) 251.

The theory of these cases is that a decree of divorce awarding the custody of a child to a designated party is, so far as such custody is concerned, interlocutory in character and is subject to modification and change as the welfare of the child may demand.

This accords with the view expressed by this court in *Gloth* v. *Gloth*, 154 Va. 511, 551, 153 S. E. 879, 71 A. L. R. 700, where, speaking of Code, section 5111, as amended, we said: "The statute expressly gives the court the *continuing jurisdiction* to change or modify its decree as to the custody and maintenance of minor children." (Italics supplied.)

For cases supporting the contrary view of the appellant, see *Milner* v. *Gatlin*, 139 Ga. 109, 76 S. E. 860, cited by her, and *Dorman* v. *Friendly*, 146 Fla. 732, 1 So. (2d) 734.

The case of *In re Alderman*, 157 N. C. 507, 73 S. E. 126, 39 L. R. A. (N. S.) 988, and other cases relied on by the appellant, do not involve the precise question here under review. In each of these cases the court of the new domicile of the child and of the parent to whom its custody had been awarded, was concerned with how far and to what extent it would recognize the decree entered in the court of the sister State where the original proceeding was instituted. We have no such question before us.

In the case before us the appellant sought and invoked the jurisdiction of the Virginia court to obtain a divorce and a decree awarding to her the custody and control of the child. So far as the custody and control of the

child are concerned, under the statute (Code, section 5111), such jurisdiction continued, notwithstanding the fact that both she and the child had removed to and lived in another State for a number of years.

The appellant next contends that the lower court erred in overruling her motion to abate the proceeding until the appellee had "purged himself of contempt" for his failure to pay temporary alimony and support money as ordered by the decree entered during the divorce proceeding.

The record discloses that on November 20, 1930, the appellee husband was ordered to pay to his wife, for the support of herself and the child, the sum of $15 per week. On August 17, 1931, he was adjudged guilty of contempt for failure to make the required payments and was ordered to be confined in jail. He appealed and the decree was affirmed. *Lindsey* v. *Lindsey*, 158 Va. 647, 164 S. E. 551. Subsequently, but just when the record does not disclose, the wife, through her counsel, notified the lower court of her desire or intention to abandon her efforts to collect the alimony in arrears. Probably this was due to the then unfortunate financial condition of the husband and his inability to pay.

Later, both the decree *a mensa* entered in 1934, and the decree *a vinculo* entered in 1935, expressly provided that due to the husband's lack of employment, property and estate, he was not then being required to contribute to the support of his wife and child.

In refusing to abate the cause because of the appellee's failure to pay the accumulated alimony and support money, the lower court took into consideration all of these circumstances, and so stated in its decree. The decree also stated that the present proceeding involved mainly the welfare and best interests of the child, and that these were not dependent upon whether the appellee was delinquent in the payments theretofore required of him.

Moreover, as has been said, in the decree on the merits the lower court has ordered the appellee to pay all accumulated support money, with interest.

As was said in *Hulcher* v. *Hulcher*, 177 Va. 12, 19, 12 S. E. (2d) 767, 769, the appellee's default in such payments was "only a circumstance to be considered on the motion to deny him the right to be heard on his petition * * * . The decision of that question was a matter also within the sound discretion of the trial judge." The same is true here.

The appellant next complains of the action of the lower court in modifying the decree which gave her the exclusive custody of the child, so as to permit the appellee to visit and correspond with him and to permit the child to visit his father. It is argued that the former decree was based on the finding that the breaking up of the home was due entirely to the appellee father, and that there is no evidence of a change of circumstances or condition for the better interests or welfare of the child so as to justify a modification of the decree.

The evidence shows that when the appellant and the child first left their home in Richmond, early in October, 1930, they lived with her parents in Columbia.. The appellant worked for a while as a hostess in a restaurant in Columbia, and the child was left in the care and custody of his maternal grandmother. In 1933 or 1934 the appellant mother obtained a position as a hostess on an airline, and the child continued under the care of his grandmother, a part of the time in Columbia and a part in New York. In May, 1935, the appellant married Captain Kern, a pilot with the airline company, and they took up their residence in Florida. For the next five years the child divided his time with his grandmother in Columbia, with his mother and stepfather at Miami, Florida, and with his aunt, Mrs. Dargan, and her husband in Spartanburg, South Carolina. In May, 1940, Mrs. Dargan died, and since that time the child has lived with his mother and her second husband, Captain Kern, at Miami. The testimony is uncontradicted that during all of this period the child has been well taken care of and is happy in his present surroundings and circumstances. Captain Kern is devoted to the boy and has indicated his desire to legally adopt and provide for him. At the time of the

entry of the decree complained of, the boy was known as Carroll Kern and looked upon Captain Kern as his father.

Apparently during his impecunious years, from 1931 to 1936, the appellee father paid little attention to his son, although he sometimes sent the boy small gifts at Christmas and on his birthday. According to his testimony, even some of these were returned by the boy's mother or grandmother.

By 1938 the appellee's financial situation had considerably improved. He is now the operator of a tea room and two food stores in Richmond, and is purchasing a home in a desirable part of the city. For the year 1940 he had a net income of approximately $6,000. Since 1938 the appellee's interest in his son has considerably increased. He at first made overtures to the mother and to the grandmother with a view of getting in touch with the child and providing for him. After these advances had been repeatedly rejected the present phase in the proceeding was instituted.

While, as has been said, the evidence shows that the boy is happy and well taken care of in his present surroundings, it also discloses that the father is a man of good habits and character and is both able and desirous of providing for his son. The report of the guardian *ad litem* shows that the appellee's household consists of his mother, a sister and her husband and their two children, where the atmosphere is good and wholesome.

The trial court patiently heard the testimony, saw the principal witnesses, and observed their demeanor. It has reached the conclusion, concurred in by the guardian *ad litem*, that it will be for the best interest of the boy that he be allowed to visit his father for at least twice a year. There is ample evidence to support this conclusion.

When the exclusive custody of the boy was awarded to the mother he was a small infant. But even during his early infancy he has spent a considerable portion of his time away from his mother. He is now nearly fourteen years of age, and if the new arrangement is distressing to him (as the appellant contends it will be), or is not entirely satisfactory, no doubt this will be promptly brought to the attention of the court and the decree can and probably will be modified.

■ We are of opinion that the trial court correctly held that the evidence showed a sufficient change of condition and circumstances for the better interests and welfare of the child so as to justify the modification of the decree within the rule laid down in *Darnell* v. *Barker*, 179 Va. 86, 93, 18 S. E. (2d) 271, 274, relied upon by the appellant.

It is next said that the court erred in not requiring the appellee to pay support money for the child from the date of the *a mensa* decree, September 12, 1934, until the date of the decree appealed from, January 25, 1943.

In the first place, there was no order of court requiring him to make such payments during this period. On the contrary, as has been said, both the *a mensa* and the *a vinculo* decrees expressly relieved him, because of his financial condition, of the payment of such support money. And, as the trial court aptly pointed out in its decree, until now there has been no request by the appellant for a modification of these decrees.

■ In the next place, the decree appealed from, as we have seen, requires the appellee to pay into court to the credit of the cause, and for the benefit of the child, the full amount of the alimony and support money accumulated against him under the former decree. It likewise requires the appellee to pay $50 per month for the support of the child, beginning January 25, 1943. Whether more should have been required of him was, we think, within the sound discretion of the court.

The trial court decreed that the appellee should pay a fee of $400 to appellant's counsel. She contends that this allowance is entirely too small and should be increased to bring the total fee up to $2,000.

If the amount of the fee were to be measured by the whole record before us, the allowance might appear inadequate. But the record includes the entire proceedings in the original divorce case, in which the appellant's present counsel was not employed. The issue in the present proceeding is within narrow limits and is confined to the right to the

custody of the child. Much of the testimony taken consists of a rehash of the original divorce proceeding and is quite unnecessary. The trial court repeatedly called attention of counsel to this during the hearings.

In view of the issue involved and the peculiar circumstances of the case, we can not say that the amount of the allowance is unreasonably small.

In a cross-assignment of error the appellee contends that he should not be required at this time to pay any fee to appellant's counsel, because, he says, she has plainly indicated an intention not to abide by the terms of the decree appealed from.

In our opinion, this position of the appellee is well taken. The record shows that during the progress of the present proceeding, counsel for the appellant made a motion for an allowance of reasonable counsel fees. The lower court advised him that such an allowance would not be made unless or until the appellant, or some one for her, had executed a bond in a reasonable sum conditioned upon her abiding by the ultimate decision and decree of the lower court, or any decree or order of the appellate court. Counsel for the appellant informed the court that his client was not willing to execute such a bond, and the motion for the allowance was not then pressed.

The appellant and the child are in Florida and beyond the jurisdiction of the Virginia court. The attitude of the appellant on the stand indicates that she still may not be willing to abide by the ultimate decision in the cause, and that the appellee may be compelled to resort to ancillary proceedings in the State of Florida, or in some other jurisdiction, in order to enforce the decrees of the Virginia court. In effect, then, the appellant is asking that she be allowed counsel fees for contesting a proceeding, the outcome of which she may elect to ignore.

The same reasoning applies to the stipend of $50 a month which the lower court has decreed that the appellee pay to the appellant for the support and maintenance of the child, beginning on January 25, 1943. The propriety of this pro-

vision in the decree is likewise raised in a cross-assignment of error.

■ In our opinion, the appellee should not be required to make either the payment for counsel fees or for support money unless and until the appellant, or some one for her, shall have executed a bond, with surety, in a reasonable sum to be fixed by the lower court, conditioned upon her abiding by the terms of the decree appealed from. The decree appealed from will be modified to so provide, and as modified will be affirmed. The costs of this appeal must be borne by the appellant.

*Modified and affirmed.*