**Ann C. MEADE, Plaintiff,**

v.

**Frank O. MEADE, Defendant.**

**Civ. No. C–85–1248–D.**

United States District Court,
M.D. North Carolina,
Durham Division.

March 20, 1986.

R. Hayes Hofler, III, Durham, N.C., for plaintiff.

Susan H. Lewis, Chapel Hill, N.C., for defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiff instituted this action seeking injunctive relief to restrain the Defendant, her former husband, from relitigating in Virginia state courts the custody issue concerning one of their minor children. This case involves orders entered by the courts of two different states affecting the custody of one child. The matter is currently before this court for determining which state court may properly exercise jurisdiction in resolving the custody dispute.

The jurisdiction of this court is invoked by Plaintiff under 28 U.S.C. § 1331. More particularly, Plaintiff claims that a federal question is presented under 28 U.S.C. § 1738A, which codified part of the Parental Kidnaping Prevention Act of 1980 (hereinafter PKPA), Pub.L. No. 96–611, § 8(a), 94 Stat. 3566, 3569 (1980). Further, Plaintiff alleges a tort claim premised on diversity jurisdiction pursuant to 28 U.S.C. § 1332. With the consent and agreement of both parties, the court will sever and decide the federal question issues raised under the PKPA, and render a final decision thereon prior to and separately from Plaintiff's claim for relief under state law. The court is satisfied that this case "arises under" a federal statute, namely 28 U.S.C. § 1738A; therefore consideration of the jurisdictional issue is proper. It is important to note that the traditional limitation on federal diversity jurisdiction in cases involving domestic relations does not apply in this action since a federal question has been alleged under 28 U.S.C. § 1738A. *See Heartfield v. Heartfield,* 749 F.2d 1138, 1140–41 (5th Cir.1985); *Flood v. Braaten,* 727 F.2d 303, 306–08 (3d Cir.1984).

### Factual Background

By stipulation of the parties, the court's decision is based on the following undisputed factual summary. After their marriage, the parties in this action lived in Danville, Virginia, and were granted an absolute divorce by a Virginia court on November 10, 1982. The divorce decree entered by the Circuit Court of Pittsylvania County, Virginia, granted custody of the two minor children to the Plaintiff; the dispute in this case is concerned with the custody of one of those children, Edmund Cummings Meade, age thirteen, born on February 20, 1973. The couple's first child, age nineteen, has lived with his father in Virginia since the divorce. Both minor children have resided with the Plaintiff, their moth-

er, in Chapel Hill, North Carolina, since June 1982, and thereafter pursuant to the divorce decree. For the past three and one-half years they have attended school in North Carolina and have established contacts in the Chapel Hill area. In particular, Edmund has received extensive counseling with a local medical expert in recent months and is engaged in on-going therapy.

The dispute giving rise to the instant proceeding stems from disagreement regarding custody of Edmund. In August 1985, Defendant stated his intention to proceed in the Virginia courts to obtain custody of the child through a modification of the initial award. In response thereto, Plaintiff filed suit in the Orange County, North Carolina, District Court, requesting the court to assume jurisdiction to decide the custody dispute, to award her temporary custody, and to enjoin the Defendant from removing either of the minor children from the State of North Carolina. In an order dated August 22, 1985, the North Carolina court granted all relief requested by the Plaintiff. Meanwhile, the Virginia court issued a preliminary ruling on September 3, 1985, in accord with Defendant's request, asserting jurisdiction in the matter and modifying its prior decree to award Defendant, the children's father, custody of Edmund. Subsequently, on September 24, 1985, the North Carolina district court considered and denied Defendant's motion to dismiss; also, the court affirmed its earlier award of temporary custody to the Plaintiff and enjoined the Defendant from physical contact with the minor children outside the State of North Carolina pending a final adjudication. Thereafter, upon Defendant's motion, the Virginia court issued an *ex parte* order on October 10, 1985, again asserting its continuing jurisdiction and setting a hearing in the cause. After a postponement, the hearing was held on November 8, 1985, wherein Plaintiff moved to dismiss and requested the court alternatively to decline the exercise of its jurisdiction; both requests were denied with the court awarding temporary custody of Edmund to the Defendant. A final hearing was set for November 21, 1985, for consid-

eration of the merits on the issue of custody at which time the court entered an order directing Plaintiff herein to surrender custody of the child to the Defendant. Plaintiff requested relief in this court from the Virginia proceedings instituted by the Defendant. By order of this court dated December 23, 1985, a preliminary injunction was granted enjoining Defendant from proceeding further in the Virginia courts until this court ruled on the merits of the jurisdictional issues. Oral argument was held February 24, 1986, at which time the parties presented arguments concerning which state court had properly exercised jurisdiction over the matter.

### Discussion

The full faith and credit clause of the federal Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. However, such recognition traditionally has not been accorded child custody determinations by the various states. The denial of full faith and credit has been justified since child custody rulings ordinarily are not considered "final" judgments as they remain subject to modification by the trial court upon a showing of changed circumstances. *Ford v. Ford,* 371 U.S. 187, 83 S.Ct. 273, 9 L.Ed.2d 240 (1962); *Kovacs v. Brewer,* 356 U.S. 604, 78 S.Ct. 963, 2 L.Ed.2d 1008 (1958); *May v. Anderson,* 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); and *New York ex rel. Halvey v. Halvey,* 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947). As a result, state courts have in the past issued conflicting custody decrees based on varied interpretations of 28 U.S.C. § 1738, the statute which implements the full faith and credit clause. In order to alleviate such inconsistencies and to facilitate interstate custody recognition, Congress enacted the PKPA which extends full faith and credit to custody decrees in all states. The present action requires interpretation and application of the PKPA in deciding whether North Carolina acted properly in modify-

ing the initial custody determination of the Virginia court.

■ The validity of the August 22, 1985, order of the North Carolina court depends on whether North Carolina had modification jurisdiction under the PKPA at that time. Courts in both Virginia and North Carolina have entered custody decrees in this case. These decrees simultaneously award custody of one child to two different parents and are thus plainly inconsistent. Because the intent of the federal statute is to avoid the multiple exercise of jurisdiction over custody, one of these awards is inconsistent with that statute. *Cf.* Parental Kidnaping Prevention Act of 1980, Pub.L. 96–611, § 7(c), 94 Stat. 3566, 3569 (1980). Upon a thorough review of 28 U.S.C. § 1738A it appears that the North Carolina decree issued August 22, 1985, modifying the prior custody decree of the Virginia court is the improper ruling. Generally, the PKPA requires state courts to enforce without modification the custody decrees of sister states that conform to the federal act. "The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State." 28 U.S.C. § 1738A(a).

The primary inquiry focuses on the existence of Virginia's jurisdiction for its issuance of the initial decree dated November 10, 1982. If Virginia lacked proper jurisdiction initially, its custody award would not have been "made consistently

with the provisions of" Section 1738A and the PKPA therefore would impose no obligation to enforce its order.[1] Subsection (c)(1) requires consideration of Virginia state law, namely Va.Code §§ 20–96(A) and 20–97 (1950). Jurisdiction for the grant of a divorce in Virginia is predicated on domiciliary residency requirements which are satisfied only if "one of the parties is domiciled in, and is and has been an actual bona fide resident of this State for at least six months preceding the commencement of the suit." Va.Code § 20–97. Since all parties resided in Virginia on the date the divorce proceedings were commenced, and for at least six months prior to that date, Virginia had jurisdiction to make the initial custody award and the November 10, 1982, award is consistent with the PKPA. *See* 28 U.S.C. § 1738A(c)(2)(A)(i). Further, neither party contests the fact that Virginia properly exercised jurisdiction in making its initial custody determination. Thus, unless modification jurisdiction exists under the federal statute, the North Carolina court is under an obligation to enforce the initial Virginia decree without modification or alteration.

The relevant federal statute sets out conditions to be satisfied before a state custody decree may be modified by another state.[2] The statute states in pertinent part:

A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

(1) it has jurisdiction to make such a child custody determination; and

---

1. The Act provides in relevant part:

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for

other reasons, and a contestant continues to live in such State; . . . .

28 U.S.C. § 1738A(c).

2. For an analytical framework in determining the existence of modification jurisdiction under the PKPA *see* Krauskopf, *Remedies for Parental Kidnapping in Federal Court: A Comment Applying the Parental Kidnapping Prevention Act in Support of Judge Edwards,* 45 Ohio St.L.J. 429, 439–41 (1984); *see also* Ruby, *Modification of an Out of State Child Custody Decree under the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act,* 16 U.Rich. L.Rev. 773, 781–86 (1982).

(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

28 U.S.C. § 1738A(f). A determination must be made whether the second state court (North Carolina) itself has subject matter jurisdiction to decide custody matters. If the second state lacks jurisdiction to make an initial custody determination, it is axiomatic that it lacks authority to modify the prior decree of another state. The North Carolina version of the Uniform Child Custody Jurisdiction Act (hereinafter "UCCJA"), codified at N.C.Gen.Stat. § 50A-1 *et seq.*, controls in determining whether North Carolina has subject matter jurisdiction.[3] As of the "commencement of the proceeding" on August 23, 1985, North Carolina was Edmund's "home state" as that term is defined by N.C.Gen.Stat. § 50A-2(5) ("The state in which the child immediately preceding the time involved lives with the child's parents, a parent, or a person acting as a parent, for at least six consecutive months."). *Cf. Kioukis v. Kioukis*, 185 Conn. 249, 257, 440 A.2d 894, 898 (1981) (holding that "proceeding" refers to the present modification action). Edmund has been residing continuously with his mother in this state for three and one-half years clearly satisfying N.C.Gen. Stat. § 50A-3(a)(1). Thus the presence of "home state" jurisdiction under North Carolina law confers authority on the state court to make a custody determination in this case. However, the existence of jurisdiction in North Carolina to make an initial custody award does not enable the North Carolina court to modify Virginia's prior decree unless the requirements of Section 1738A(f)(2) are satisfied since "[t]he PKPA preempts state law that permits modification in the second state [North Carolina] solely because jurisdiction to make an initial decree exists." Krauskopf, *Remedies for Parental Kidnapping in Federal Court: A Comment Applying the Parental Kidnapping Prevention Act in Support of Judge Edwards*, 45 Ohio St.L.J. 429, 437 (1984) (hereinafter referred to as "Krauskopf").

The dispositive issue in this case is whether Virginia "no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination." 28 U.S.C. § 1738A(f)(2). In the order dated September 3, 1985, the Virginia court, and Defendant in his brief, assert continuing jurisdiction under Virginia Code § 20-108 (1950).[4] This provision concededly enables

---

**3.** N.C.Gen.Stat. § 50A-3 provides:

(a) A court of this State authorized to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this State because of the child's removal or retention by a person claiming the child's custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

(2) It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and the child's parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence relevant to the child's present or future care, protection, training, and personal relationships; or

(3) The child is physically present in this State and (i) the child has been abandoned or

(ii) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

**4.** Va.Code § 20-108 provides:

The court may from time to time after decreeing as provided in the preceding section (§ 20-107), on petition of either of the parents or on its own motion or upon petition of any probation officer or superintendent of public welfare, which petition shall set forth the reasons for the relief sought, revise and alter such decree concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require.

the court to modify its own prior decrees as is commonly provided by state law. *Kern v. Lindsey*, 182 Va. 775, 780–81, 30 S.E.2d 707, 709 (1944). Yet, on the basis of the Virginia Supreme Court's ruling in *Middleton v. Middleton*, 227 Va. 82, 314 S.E.2d 362 (1984), Plaintiff contends that the Virginia court lacked jurisdiction since it was required to decline the exercise of its jurisdiction. However, Plaintiff's argument perforce concedes the existence of jurisdiction in Virginia under Section 20–108; in fact, the plaintiff in *Middleton, supra,* recognized the continuing jurisdiction of the Virginia trial court under that same section. 314 S.E.2d at 367. Despite the conceded applicability of Section 20–108, the Virginia Supreme Court held that on those facts the trial court was "required to decline to exercise jurisdiction" and that it was an abuse of discretion not to do so.[5] *Id.* at 368. For purposes of this case, it cannot be gainsaid that the Virginia court in *Middleton, supra,* had jurisdiction under Section 20–108; similarly in this case the Virginia court has continuing jurisdiction.

Additionally, Defendant contends that Virginia now has jurisdiction under Va. Code § 20–126(A)(2) because Edmund and the Defendant have "significant connections" with Virginia;[6] in support thereof Defendant points out that Edmund was born in Danville, Virginia, and lived there until just three and one-half years ago and that many friends and relatives (including his brother and Defendant, his father) continue to live in Virginia. With the presence of these "significant connections" to Virginia, it is not true that Virginia "no longer has jurisdiction" and the existence of modification jurisdiction in North Carolina is precluded under Section 1738A(f)(2) unless

Virginia "has declined to exercise such jurisdiction to modify such determination." The insuperability of this latter requirement is manifested by the facts of this case; the Virginia court has expressly determined that it has jurisdiction and on that basis has modified its prior decree in awarding custody of Edmund to the Defendant. Thus North Carolina is under a federal duty to enforce the decree according to its terms and acted improperly in modifying Virginia's initial decree.

In further support of the conclusion that North Carolina lacks modification jurisdiction under the PKPA, the court holds that Virginia's September 3, 1985, decree modifying its initial award is consistent with Section 1738A and that order is entitled to enforcement by North Carolina as required by 28 U.S.C. § 1738A(a). Virginia, as the court granting the initial decree, has continuing jurisdiction under subsection (d) of the PKPA. *See* 28 U.S.C. § 1738A(c)(2)(E). The so-called continuing jurisdiction provision provides as follows:

> The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

28 U.S.C. § 1738A(d). This provision imposes three requirements for the existence of continuing jurisdiction in Virginia: (1) a valid initial custody decree; (2) the present existence of jurisdiction under the laws of Virginia; and (3) the current residence of one of the contestants or the child in Virginia. *Cf. DiRuggiero v. Rodgers*, 743 F.2d 1009, 1016 (3d Cir.1984). The first

---

5. The court in *Middleton, supra,* based its decision on an application of Va.Code § 20–130(C) to the facts presented in that case. Notwithstanding the similarities or dissimilarities between the facts of this case and *Middleton,* this court declines to hold that the Virginia court abused its discretion and should have declined the exercise of its jurisdiction. To hold otherwise, by ruling that Virginia was an "inconvenient forum," would require the court to "consider if it is in the interest of the child that another

state assume jurisdiction." Va.Code § 20–130(C). This would inevitably involve the court in the merits of this custody dispute to a greater extent than intended under the PKPA.

6. Va.Code § 20–126(A)(2) is substantially identical to N.C.Gen.Stat. § 50A–3(a)(2) as reproduced at n. 3, *supra.* (The Virginia version of the UCCJA, effective January 1, 1980, appears at Va.Code § 20–125 *et seq.*)

and third criteria are satisfied since it is conceded that Virginia was the "home state" when the November 10, 1982, order was entered and the Defendant continues to reside in Danville, Virginia. The second requirement, that Virginia currently have jurisdiction under its own laws, is the only disputed factor in this case for the existence of Virginia's continuing jurisdiction under Section 1738A(d). As previously discussed Virginia has continuing jurisdiction under its own laws (Va.Code § 20–108) and there exist "significant connections" with that state to satisfy jurisdiction under Va. Code § 20–126(A)(2). Thus the September 3, 1985, order by the Virginia court is consistent with the PKPA provisions as set forth in Sections 1738A(c)(1) and (2)(E).

There is a decided preference in the PKPA for exclusive continuing jurisdiction to modify in the initial decree state.

> The PKPA places a federal duty upon state courts to enforce and not modify a previous state court's custody determination. At the same time the PKPA commands that the initial court's jurisdiction to modify continues. It allocates continuing power to modify to the court that initially made a child custody order, and it requires another state's court that subsequently attains jurisdiction to defer to that initial court for modification.

Krauskopf, 45 Ohio St.L.J. at 435–36 (footnotes omitted). *See* Note, *The Parental Kidnaping Prevention Act: Application and Interpretation*, 23 J.Fam.L. 419 (1984–85). Also, cases applying the PKPA have recognized this preference. "Once a valid custody determination has been made ... that court will presumptively retain jurisdiction, pursuant to Section 1738A(d), so long as: (a) it has jurisdiction under the law of the state, and (b) the state remains the residence of the child or a parent or any 'contestant.'" *McDougald v. Jenson*, 596 F.Supp. 680, 686 (N.D.Fla.1984). In the Commissioner's note to Section 14 of the UCCJA, as relevant to the existence of modification jurisdiction, it was stated that: "Courts which render a decree normally retain continuing jurisdiction to modify the decree under local law.... If, however *all*

persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere." 9 U.L.A. 111, 154 (1979). Absent this attenuation of contacts with the initial decree state a second state may not modify under the PKPA unless the other state has declined to exercise its jurisdiction. Krauskopf, 45 Ohio St.L.J. at 433. On the basis of the preference given in favor of continuing jurisdiction in the state that issued a valid initial decree and in the absence of a showing that the initial decree state has refused to decline the exercise of its jurisdiction, this court holds that Virginia is the proper jurisdiction to resolve this custody dispute.

An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

### JUDGMENT AND ORDER

It appearing to the court that the only issue in this case before the court at this time is the jurisdictional issue under 28 U.S.C. § 1738A and that the parties agreed that the court resolve this issue on the stipulated facts before the court; and that oral argument was presented on the merits of the jurisdictional issue on February 24, 1986;

Therefore, based upon the court's interpretation and application of 28 U.S.C. § 1738A to the stipulated facts in this case and for the reasons set forth in a memorandum opinion filed contemporaneously herewith;

IT IS ADJUDGED AND DECREED that North Carolina lacks jurisdiction under 28 U.S.C. § 1738A to modify or alter the initial custody decree entered by the Virginia court;

IT IS ORDERED, ADJUDGED AND DECREED that Virginia has continuing jurisdiction under 28 U.S.C. § 1738A to modify its initial custody award and that the September 3, 1985, order of the Virginia court is entitled under principles of full faith and credit to enforcement according

to its terms by the North Carolina courts; and

IT IS FURTHER ORDERED that this order of the court be construed as a final judgment on the jurisdictional issue in this case, thereby dissolving the court's December 23, 1985, preliminary injunction order.