INGRID TRUNDY DELK vs. JOSE GONZALEZ.

Bristol. October 4, 1995. - December 13, 1995.

Present: LIACOS, C.J., WILKINS, LYNCH, GREANEY, & FRIED, JJ.

*Parental Kidnapping Prevention Act. Constitutional Law*, Full faith and credit. *Comity. Jurisdiction*, Custody of child. *Parent and Child*, Custody.

In an interstate custody dispute involving conflicting custody orders in Virginia and Massachusetts, the father's home State and the mother's home State, respectively, a judge of the Probate Court was without jurisdiction over the matter where Virginia had validly asserted, and specifically had not declined, jurisdiction pursuant to Virginia law, in conformance with the requirements of the applicable provisions of the Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C. § 1738A, and where the PKPA preempts any conflicting provisions of the Massachusetts Child Custody Jurisdiction Act, G. L. c. 209B, §§ 2 (*a*) (1) & 2 (*d*). [529-536]

COMPLAINT to revise, alter, and enforce a foreign decree filed in the Bristol Division of the Probate and Family Court Department on January 8, 1993.

The case was heard by *Robert A. Scandurra*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Deborah Sirotkin Butler* for the defendant.

*Nancy C. Stanton* (*Robert J. Marchand & Carleton E. Abbott, Jr.,* with her) for the plaintiff.

*Paul M. Robinson, Jr.*, amicus curiae, submitted a brief.

FRIED, J. This matter requires the court to resolve an interstate custody dispute between the plaintiff, Ingrid Delk (Delk or mother), and the defendant, Jose Gonzalez (Gonzalez or father). At the time of oral argument, there were in effect conflicting custody orders in the father's home state of Virginia and the mother's home state of Massachusetts.

## I.

Bernadette Lynn Gonzalez (also known as Bernadette Trundy) was born on March 18, 1989, in Virginia to Ingrid Trundy (now Ingrid Delk) and Jose Gonzalez, an enlisted serviceman. Bernadette and her parents lived together in Virginia from her birth until April, 1990. In April, 1990, Bernadette's parents separated, and she resided with her mother. In December of the same year, Delk married her present husband, Michael Delk, also an enlisted serviceman. Soon thereafter Bernadette, her mother and Michael Delk moved to Georgia. In June of 1991, the Delks moved to New York, and in October of 1991, they moved to Fall River, Massachusetts, where they reside today. Gonzalez has resided in Virginia throughout this dispute.

Gonzalez initiated judicial proceedings in Virginia by filing a custody and paternity action on November 28, 1990, prior to the time the Delks removed Bernadette from Virginia. On August 8, 1991, after a hearing, the Juvenile and Domestic Relations District Court of Norfolk, Virginia (Virginia court), awarded custody of Bernadette to her mother. Gonzalez appealed from this ruling, but before the appeal could be resolved, the parties entered into a written agreement. At a proceeding at which Delk was present, the parties signed the agreement and submitted it to the Circuit Court for the City of Norfolk (Virginia Circuit Court) as the consent decree of December 11, 1992. The consent decree awarded the parents joint legal custody of Bernadette, the mother with primary physical custody and the father with liberal visitation rights.

As provided in the consent decree, Gonzalez traveled to Massachusetts to visit Bernadette on December 26, 1992. When Gonzalez arrived at the Delks' home, Delk alleges that Gonzalez threatened to take Bernadette away from her permanently. The police were called and Gonzalez left without Bernadette. Delk then obtained an abuse prevention order pursuant to G. L. c. 209A (1992 ed.), prohibiting Gonzalez from abusing Delk and ordering him to remain away from Delk's residence. Alleging that Gonzalez violated the re-

straining order and that he was stalking Delk in violation of G. L. c. 265, § 43 (1992 ed.), allegations Gonzalez denies, Delk filed a criminal complaint against Gonzalez in the New Bedford District Court.

On March 18, 1992, Gonzalez appeared in the Virginia court requesting that a show cause summons be issued against Delk for denying him visitation rights. From April 9, 1992, to April 28, 1993, the Virginia court on several occasions issued a capias for Delk's arrest because she failed to appear in court to explain why Gonzalez had been denied visitation. Gonzalez also sought enforcement of his visitation rights in the Virginia Circuit Court. On January 6, 1993, Gonzales filed a petition in the Virginia Circuit Court requesting that Delk show cause why she should not be held in contempt for refusing to allow Gonzalez to visit Bernadette pursuant to the consent decree. The mother did not answer this request, and on March 16, 1993, the judge of the Virginia Circuit Court found Delk in contempt of court and issued a capias for her arrest. Although the mother has not appeared in Virginia since she signed the consent decree, her counsel was present at these proceedings at all relevant times.

In the meantime, on January 8, 1993, Delk filed a complaint to revise, alter and enforce a foreign decree in the Probate and Family Court Department of Bristol County (Massachusetts court). The docket reveals that no action was taken on this complaint until August of 1993.

On June 29, 1993, not having seen Bernadette since December, 1991, Gonzalez filed a petition in the Virginia court in which he sought custody of Bernadette. On July 29, 1993, the Massachusetts court entered an ex parte abuse prevention order pursuant to G. L. c. 209A against Gonzalez. This order required that Gonzalez surrender his rights to the custody of Bernadette to Delk. The Massachusetts court vacated this order on August 8, 1995.

A hearing on Gonzalez's petition for custody was scheduled for August 4, 1993, in the Virginia court. Two days before the hearing date, however, Delk filed a motion in the

Delk *v.* Gonzalez.

Massachusetts court to stay the proceedings in the Virginia court. On August 9, 1993, the Massachusetts court entered a temporary restraining order prohibiting Gonzalez from pursuing activity in the Virginia court. Nevertheless, on August 18, 1993, the hearing on Gonzalez's petition took place in Virginia with Delk's attorney making a special appearance. At the hearing, the Virginia court refused to decline jurisdiction over the custody issue. The Massachusetts court responded by issuing a temporary order incident to Delk's complaint awarding Delk custody of Bernadette pending a hearing in the Massachusetts court on the merits.

On September 8, 1993, a judge of the Virginia court, relying on a report of the guardian ad litem and Delk's "persistent denial of visitation" privileges to Gonzalez, issued an order awarding custody to Gonzalez. In that order, the Virginia court held that pursuant to the Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C. § 1738A, the Virginia court "continues to have jurisdiction under subsection (d) of the PKPA if this Court has jurisdiction under Virginia law." Turning to Virginia State law, the Virginia judge stated, "Virginia would not presently have jurisdiction under any subsection of §20-126, the jurisdictional section of the UCCJA. However . . . §20-108 gives Virginia courts continuing jurisdiction when the child has been removed from Virginia."[1] Having found jurisdiction in Virginia, the judge concluded that the Massachusetts court's order staying the proceedings in Virginia was void, as were any ex parte protective orders issued by the Massachusetts court against Gonzalez to the extent that they had an impact on the Virginia court's custody determination. The Virginia Circuit

---

[1] Virginia Code § 20-108, which predates the Uniform Child Custody Jurisdiction Act (UCCJA) §§ 1-28, 9 U.L.A. 123 (Master ed. 1988), is a jurisdictional statute granting Virginia courts *"continuous jurisdiction* to change or modify its decree as to the custody and maintenance of minor children [emphasis added]." *Kern* v. *Lindsey*, 182 Va. 775, 781 (1944), quoting *Gloth* v. *Gloth*, 154 Va. 511, 551 (1930). In 1979, Virginia adopted the UCCJA, see 1979 Va. Acts c. 299, codified at Va. Code Ann. §§ 20-125 — 20-146.

Court affirmed this order and issued a final order nunc pro tunc on September 21, 1994, awarding custody of Bernadette to Gonzalez effective February 16, 1994. Delk did not appeal from this determination.

In the spring of 1994, the Massachusetts court began to consider Delk's amended complaint to revise, alter, and enforce foreign decrees. As the Uniform Child Custody Jurisdiction Act § 7(d), 9 U.L.A. 233 (Master ed. 1988) (UCCJA), encourages them to do, the Massachusetts judge and the Virginia judge spoke on the telephone about this conflict on May 25, 1994. The Virginia judge refused to decline jurisdiction, and the two judges were unable to resolve this conflict.

A hearing on Delk's amended complaint was eventually held on August 8, 1994. In his findings and order of August 24, 1994, contrary to the Virginia judge's holding, the Massachusetts judge concluded that Massachusetts had exclusive jurisdiction over the issue of custody under the Massachusetts Child Custody Jurisdiction Act, G. L. c. 209B (1994 ed.) (MCCJA).[2] As for the application of subsections (g) and (f) of the PKPA, the Massachusetts judge stated, "[i]n this case, Massachusetts clearly has jurisdiction . . . and while it cannot be said that Virginia has declined to exercise jurisdiction, the courts of Virginia, in the respectful opinion of this court, cannot exercise jurisdiction any longer." The judgment awarded Delk sole legal and physical custody of Bernadette. Gonzalez appealed, and we granted his application for direct appellate review.

II.

A.

The PKPA "[e]xtend[s] full faith and credit requirements to child custody conflicts." Thompson v. Thompson, 484 U.S. 174, 187 (1988). Congress enacted the PKPA with the

---

[2]The MCCJA is "similar but not identical" to the UCCJA. Custody of a Minor (No. 3), 392 Mass. 728, 731 n.3 (1984). The differences, however, have no bearing on the issues in this case.

principal purpose of "avoid[ing] jurisdictional competition and conflict between state courts," Pub. L. 96-611, § 7(c) (5), 94 Stat. 3569 (1980), and note following 28 U.S.C. § 1738A. See *Thompson* v. *Thompson, supra* at 183-187. Thus, the PKPA requires the court of one State to repose confidence that the courts of a sister State will resolve these often emotion-laden custody disputes wisely and with compassion. That confidence is most sorely tested in a case such as this one where the court, which presently has the child before it, is convinced that its judgment and not that of a court in another State will best serve the interests of that child. Such conflicts are especially difficult because jurisdictional rules, particularly those of the PKPA, tend to be rigorous and formalistic, while flexibility and sympathetic informality are the very essence of modern child custody jurisprudence. The notions of comity demanded by our Federal system require us to concede that the courts of our sister States, even when they reach a different decision than we would have, are endowed with an equal measure of wisdom and sympathy.

There is no dispute that Virginia had jurisdiction over the custody dispute up to the date of the consent decree, December 11, 1992.[3] The question is whether four weeks later, on January 8, 1993, the Massachusetts court had acquired ex-

---

[3]According to Delk's brief and the Massachusetts court's opinion, Bernadette was not removed from Virginia until after her mother's marriage to Michael Delk in December of 1990. Therefore, on November 28, 1990, the date Gonzalez initiated the custody proceeding, Virginia was Bernadette's "home State on the date of the commencement of the proceedings," 28 U.S.C. § 1738A (c)(2)(i). If, as Gonzalez's brief and the Virginia courts' opinions state, Bernadette was removed from Virginia in August of 1990, Virginia was Bernadette's "home State within six months before the commencement of the proceeding and the child [was] absent from such State because of [her] removal or retention by a contestant or for other reasons, and a contestant continues to live in such State." *Id.* at § 1738A (c)(2)(ii). Accordingly, on either account, Virginia asserted original jurisdiction over this matter consistent with the PKPA. Virginia also made its second child custody determination, the entry of the consent decree on December 11, 1992, consistent with the provisions of the PKPA because the proceeding that culminated in the consent decree commenced on November 28, 1990. *Id.* at § 1738A (c)(2)(A)(i) and (ii).

clusive jurisdiction to adjudicate Bernadette's custody.[4] The Massachusetts judge first determined that pursuant to the MCCJA, G. L. c. 209B, §§ 2(*a*) (1) & 2(*d*), Massachusetts had jurisdiction over this dispute. The jurisdictional inquiry, however, may not stop with an examination of our statute. See *Custody of Brandon*, 407 Mass. 1, 11 n.11 & 13-15 (1990). Where the Massachusetts court is the second court to be called upon to adjudicate a custody dispute, it must also satisfy the jurisdictional demands of the PKPA, the Federal statute governing interstate custody disputes. In this case, the Massachusetts court's disposition of Gonzalez's claims under the Federal statute was perfunctory, to say the least. We made entirely clear in *Care & ·Protection of Vivian*, 420 Mass. 879, 884 (1995), a case decided subsequent to the decision below, that "[t]he purposes of the PKPA [may not] be undercut," and that the jurisdictional prerogatives of the sister State may not be denied, even in the possibly more compelling circumstances of a nonemergency care and protection proceeding initiated by the Department of Social Services. The PKPA preempts State law that "sufficiently injure[s] the objectives of the federal program." *Archambault* v. *Archambault*, 407 Mass. 559, 567 (1990), quoting *Hisquierdo* v. *Hisquierdo*, 439 U.S. 572, 583 (1979). Thus, if a Massachusetts's law allows jurisdiction over a custody dispute where the PKPA does not, the PKPA must prevail.[5]

---

[4]We have considered whether Gonzalez's efforts on January 6, 1993, to enforce his visitation rights under the consent decree, served to continue the custody proceeding in Virginia that began in November, 1990. Under the facts of this case, however, the PKPA vests jurisdiction in Virginia regardless of whether there existed a pending custody proceeding in Virginia throughout this dispute. Therefore we need not decide if Gonzalez's efforts to enforce the consent decree provided Virginia continuous jurisdiction under subsection (g) of the PKPA.

[5]This conflict may occur often because the UCCJA permits concurrent jurisdiction between States, while the PKPA's rules allow only one State to assert jurisdiction at a time. See generally Comment, Family Law — State and Federal Child Custody Statutes Prohibit Modification of Home State's Child Custody Order, 28 Suffolk U.L. Rev. 261, 264-266 (1994); Blakesley, Child Custody-Jurisdiction and Procedure, 35 Emory L.J. 291, 308-312 (1986).

## B.

The mandate of the PKPA is uncompromising in its demand that "every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State." 28 U.S.C. § 1738A (a). In this case, on December 11, 1992, the Virginia Circuit Court made a custody determination consistent with this provision. The Massachusetts courts must enforce and may not modify this determination unless permitted to modify the decree under § 1738A (f).[6] Subsection (f) of the PKPA grants the power to modify a decree properly made in another State if the later court "has jurisdiction to make such a child custody determination; and (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination." We recognize that the Massachusetts court had jurisdiction on January 8, 1992, under the MCCJA to make a child custody determination in this matter. The Virginia court refused to decline jurisdiction in the telephone conversation with the Massachusetts judge, and therefore the remaining issue under subsection (f) is whether Virginia "no

---

[6] " '[M]odification' and 'modify' refer to a custody determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody determination concerning the same child, whether made by the same court or not." 28 U.S.C. § 1738A (b)(5). " '[C]ustody determination' means a judgment, decree, or other order of a court providing for the custody or visitation of a child; and includes permanent and temporary orders, and initial orders and modifications." *Id.* at § 1738A (b)(3). The Massachusetts judge's August 24, 1994, order is a custody determination which modifies Virginia's prior custody determination and therefore must satisfy subsection (f) to be valid. In addition, the PKPA explicitly includes "temporary orders" within the definition of "custody determination." Compare 28 U.S.C. § 1738A (b)(3) with UCCJA § 2(2). See also G. L. c. 209B, § 1 (including temporary orders). Thus, the abuse prevention orders issued by the Massachusetts courts, to the extent they have an impact on custody, were custody determinations which modified Virginia's prior custody determination and therefore must satisfy the requirements of the PKPA to be effective.

longer ha[d] jurisdiction" over the custody dispute on January 8, 1992.

The Virginia court has continuing jurisdiction if it satisfies the jurisdictional requirements of both the PKPA and its State law. Virginia has jurisdiction over a custody dispute under the PKPA if it fulfills the conditions of §1738A (c). Although Virginia was no longer Bernadette's "home state" for purposes of subsection (c) (2) (A) on January 8, 1992, the PKPA vests "continuing jurisdiction" over the child custody dispute if the requirements of subsection (c) (2) (E) are met.[7] Subsection (c) (2) (E), in turn, conditions "continuing jurisdiction" on Virginia's fulfillment of subsection (d). Subsection (d) states that Virginia's jurisdiction over this child custody dispute "continues as long as the requirement of subsection (c) (1) of this section continues to be met and such State remains the residence of the child or of any contestant." It is uncontroverted that Gonzalez remains a resident of Virginia, that leaves the requirement of (c) (1) as the sole issue. To satisfy subsection (c) (1), Virginia must have "jurisdiction under the law of such State." Therefore the determination whether the Virginia court is vested with continuous jurisdiction under the PKPA depends on whether, under Virginia law, the Virginia courts have continuing jurisdiction over Bernadette's custody.

The determination whether Virginia continues to have jurisdiction over the custody dispute must be evaluated under Virginia laws and a determination on this point by a Virginia court must be dispositive. It cannot be that the PKPA, in seeking to "avoid jurisdictional competition and conflict," *Thompson* v. *Thompson,* 484 U.S. 174, 183 (1988), would have envisaged allowing jurisdiction to turn on a determination by one State that a court of another State had in that

---

[7]See generally Note, Interstate Child Custody and the Parental Kidnapping Prevention Act: The Continuing Search for a National Standard, 45 Hastings L.J. 1329, 1357-1366 (1994) (Congress adopted a continuous jurisdiction scheme favoring the decree State). Where the UCCJA, State law and even § 1738A (c)(2)(A) allow concurrent jurisdiction, subsection (c)(2)(E) resolves jurisdictional deadlocks.

very case incorrectly interpreted its own law.[8] The Virginia judge found continuing jurisdiction under Virginia State law over this dispute in his order of September 8, 1993. The Circuit Court affirmed his assertion of jurisdiction over this dispute on September 21, 1994. Delk has not appealed from this determination. The Massachusetts judge was aware of the Virginia judge's finding prior to issuing his opinion. Therefore, Massachusetts courts must decline to enter into this custody dispute until Virginia either determines, under its laws, that it no longer has jurisdiction or agrees to give up jurisdiction.[9]

C.

Delk argues that the Virginia court lacked jurisdiction for purposes of the PKPA because that court did not base its assertion of jurisdiction on Virginia's version of the UCCJA. The Virginia court ruled that it had continuing jurisdiction under Va. Code § 20-108,[10] an older statute in effect since 1919, but invoked by the Supreme Court of Virginia in *Middleton* v. *Middleton*, 227 Va. 82, 93 (1984).[11] Under Vir-

---

[8]The only limitation on Virginia's interpretation of its own jurisdictional statute would be if that interpretation violated the due process clause of the United States Constitution. But the exercise of continuing jurisdiction in custody cases is too familiar to be vulnerable to such a challenge. See *May* v. *Anderson*, 345 U.S. 528, 535-536 (1953) (Frankfurter, J., concurring). See also Restatement (Second) Conflict of Laws § 79 comment a, at 237-238 (1971). In any event such a constitutional claim cannot be raised collaterally here once it has been litigated in Virginia. See *Durfee* v. *Duke*, 375 U.S 106, 111 (1963); *Bassett* v. *Blanchard*, 406 Mass. 88, 90 (1989).

[9]The only relief from this mandate even arguably relevant here allows a court in a State where the child is present to make a child custody determination if "it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse." 28 U.S.C. § 1738A (c)(2)(C)(ii). But the Massachusetts judge did not ground his court's jurisdiction in this subsection nor does Delk rely on this subsection as the basis for Massachusetts's jurisdiction over this dispute. Therefore, we do not consider this subsection's application to this case.

[10]Because Gonzalez remained a resident of Virginia, Va. Code § 20-108, as applied by the Virginia court in this case, did not extend Virginia's jurisdiction beyond that allowed by the PKPA.

[11]Because the custody dispute involved was international, the *Middleton* court did not consider the impact of the PKPA on State law. *Middleton* v.

ginia's version of the UCCJA, however, as the Virginia court itself held, Massachusetts either had jurisdiction unconditionally or it would acquire jurisdiction because it was the more appropriate forum to adjudicate the dispute. Thus, if the Virginia court had followed the criteria set out in its own version of the UCCJA and declined to exercise jurisdiction, the Massachusetts judge's assertion of jurisdiction would have been proper.

It is Delk's position that the PKPA prohibits the Virginia court from maintaining jurisdiction pursuant to non-UCCJA State law. The text and purpose of the PKPA, however, argue against this. The text speaks unqualifiedly in § 1738A (c) (1) when it states that the jurisdictional determination of the original State according to its own law is the factor on which its continuous jurisdiction depends. When Congress enacted the PKPA, it faced "often inconsistent and conflicting laws of various States regarding jurisdiction over child custody disputes." *Archambault* v. *Archambault, supra* at 566. Congress intended the PKPA to resolve all jurisdictional conflicts, and did not limit the reach of the PKPA to conflicts arising under the UCCJA. Moreover, the UCCJA has a different purpose: to guide a court in determining when it should decline jurisdiction even when it might otherwise enjoy it. Such a discretionary judgment cannot solve the kind of interstate standoff we have here; it is rather a guide to interstate accommodation. The PKPA, on the other hand, seeks to avoid conflict by clearly assigning jurisdiction to one or another State. The State to which the jurisdiction is assigned may then be guided by the UCCJA in declining to exercise that jurisdiction. It would invite rather than avoid

---

*Middleton*, 227 Va. 82, 93 n.2 (1984). Therefore, the case may not be apposite to show that the older statute survived the adoption of the UCCJA in Virginia. The court in *Middleton* held that although Va. Code § 20-108 provided the lower court with continuing jurisdiction over the dispute, the lower court should nevertheless have declined to assume jurisdiction (in circumstances similar to the case at bar) by reference to the factors set out in subsection (f) of the UCCJA. *Middleton* v. *Middleton, supra* at 93-96.

conflict if States could make the jurisdictional determinations under the PKPA in terms of how other States should interpret their own laws.

The present judgment is vacated, and a new judgment is to be entered dismissing the action for lack of jurisdiction.

*So ordered.*